FILED
LODGED
RECEIVED

SEP 10 2013

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. MJ13-454
US Mail Parcel, bearing confirmation number )
EI991441398US )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

US Mail Parcel, bearing confirmation number EI991441398US as more fully described in Attachment A.

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- [✓] evidence of a crime;
- [✓] contraband, fruits of crime, or other items illegally possessed;
- [✓] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 841 | Distribution of Controlled Substances & Unlawful Use of a Communications |
| Title 21, U.S.C. § 843 | Facility, (U.S. Mails) to Distribute Controlled Substances. |

The application is based on these facts:

See affidavit of       Bryce K. Dahlin, U.S. Postal Inspector

[✓] Continued on the attached sheet.

[ ] Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Bryce K. Dahlin, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 10, 2013

_____
Judge's signature

City and state: Seattle, Washington       James P. Donohue       U.S. Magistrate Judge
*Printed name and title*

| | |
|---|---|
| 1 | STATE OF WASHINGTON  ) |
| 2 |                                                  )   ss |
|   | COUNTY OF KING              ) |

## AFFIDAVIT

Bryce K. Dahlin, being first duly sworn on oath, deposes and says:

## BACKGROUND

1. **Affiant Background.** I am a U.S. Postal Inspector with the United States Postal Inspection Service (USPIS) and have been so employed since January 2013. I am currently assigned to the Seattle Division, Prohibited Mails Narcotic Team, where I investigate controlled substances transported via the United States Mail. I completed a twelve week Basic Inspector Training course in Potomac, Maryland, which included training regarding transportation of narcotics via the U.S. mails. I have also received training on the identification of controlled substances and interdiction of controlled substances. Additionally I was a military police officer and narcotic trained K-9 dog handler for the 369th Security Force Squadron, Ramstein Air Force Base in Germany. During the course of my law enforcement career, I have conducted or participated in criminal investigations involving illegal narcotics, bomb threats, mail fraud, identity theft, and assaults. I have also participated in the execution of both search warrants and arrest warrants.

2. **Duties, Training & Experience.** As part of my duties, I investigate the use of the U.S. mails to illegally mail and receive controlled substances, the proceeds of drug trafficking, as well as other instrumentalities associated with drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances), and 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances). As set forth below, my training and experience includes identifying parcels with characteristics indicative of criminal activity. During the course

AFFIDAVIT OF BRYCE K. DAHLIN- 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of my employment with the USPIS, I have participated in over one-hundred (100) criminal investigations involving suspicious parcels and controlled substances.

3. The information contained in this affidavit is based upon knowledge I gained from my investigation, my personal observations, my training and experience, and investigation by other Inspectors, agents, and officers. Because the purpose of this affidavit is limited to setting forth probable cause to search the subject parcel, I have not set forth every fact of which I am aware pertaining to the investigation.

4. From my training and experience, I am aware that the United States Postal Service (USPS) mail system is often used to transport controlled substances and/or the proceeds from the sales of controlled substances throughout the United States. I have learned and observed that sometimes drug traffickers put controlled substances and proceeds in the same package. I also know that drug traffickers prefer mail/delivery service such as Express Mail because of the reliability of this service as well as the ability to track the article's progress to the intended delivery point. When a drug trafficker learns that a mailed article has not arrived as scheduled, he/she becomes suspicious of any delayed attempt to deliver the item.

5. In addition, I am aware that the USPS Express Mail service was custom-designed to fit the needs of businesses by providing overnight delivery for time sensitive materials. Business mailings often contain typewritten labels, are in flat cardboard mailers, and usually weigh less than eight (8) ounces. In addition, businesses using corporate charge accounts often print their account number on the Express Mail label in order to expedite transactions with USPS.

6. Based on my training and experience concerning the use of Express Mail for the transportation of controlled substances and/or the proceeds from the sales of controlled substances, I am aware these packages usually contain some or all of the following characteristics (which are different than characteristics of packages being sent by legitimate businesses):

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. Unlike typical Express Mail business mailings which usually have typed labels, packages containing controlled substances and/or proceeds often have handwritten address information. In addition, the address information often contains misspelled words or incomplete/incorrect addresses. This is done in an effort to help conceal the identities of the individuals involved.

b. Express Mail packages containing controlled substances and/or proceeds often stand out from typical business mailings as they do not bear any advertising on the mailing container/box, and are usually being mailed from one individual to another.

c. The sender and/or recipient addresses on Express Mail packages containing controlled substances and/or proceeds often either are fictitious, or are persons not known to postal personnel familiar with the addresses listed.

d. The zip codes for the sender addresses on Express Mail packages containing controlled substances and/or proceeds are often different from the zip codes of the post offices from where the parcels were mailed. In particular, narcotics are often sent through the mails from California to Washington.

e. Express Mail packages containing controlled substances and/or proceeds are often heavily taped with tape on the seams of the parcel, in an effort to conceal scent.

f. Express Mail packages containing controlled substances and/or proceeds often include a waiver of signature. As a general matter, Express Mail requires a signature confirming receipt. Therefore, if a sender does not want a confirmation signature, he/she must affirmatively waive this requirement by checking a box.

7. Inspectors who encounter a package with any or all of the above characteristics often further scrutinize the package by, among other ways, address verifications and use of a trained narcotic-detecting canine examination.

## ITEM TO BE SEARCHED

8. As set forth in Attachment A, this affidavit is made in support of an application for a search warrant for one USPS Express Mail parcel, hereinafter referred to as "SUBJECT PARCEL." This parcel is believed to contain controlled substances or proceeds from the sale of controlled substances. The SUBJECT PARCEL is further described as follows: One Express parcel addressed to "Saleem Willis, 8640 Fawcett

AFFIDAVIT OF BRYCE K. DAHLIN- 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Ave, Tacoma, WA 98444." This parcel is an Express Mail parcel measuring approximately 12.5" x 9.5." This parcel is postmarked September 6, 2013, from zip code 94619, and carries $19.95 in postage. The delivery confirmation number is EI991441398US.

## ITEMS TO BE SEIZED

9. The application requests that law enforcement officers and agents be authorized to seize the following from the SUBJECT PARCEL, which constitute the fruits, instrumentalities, and evidence of mailing and distribution of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances):

   a. Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, oxycodone, and Oxycontin;

   b. Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

   c. Controlled substance-related paraphernalia;

   d. Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

   e. Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

   f. Fingerprints and/or handwriting, to identify who handled and/or mailed the package.

## THE INVESTIGATION

10. Last week, I began reviewing Express Mail labels for suspicious parcels. In the course of my review I discovered that between May 2012 and August 2013, an individual named Saleem Willis, received fifteen (15) Express Mail parcels at 8640

Fawcett Ave, Tacoma, WA 98444, from an individual with the initials M.D. at an address in Oakland, CA. Both the full name and address of M.D. are known to me, but redacted for purposes of this affidavit. According to Accurint, a law enforcement database, the addresses and names used by Willis and M.D. are valid. The fifteen parcels sent from M.D. to Willis came approximately once a month. Each parcel was approximately 10-12 ounces, which is consistent with shipments of pills. The labels on the parcels were handwritten, but did not include a signature waiver.

11. As a result of my findings, I placed a parcel watch on "8640 Fawcett Ave, Tacoma, WA 98444."

12. On September 9, 2013, I was alerted by postal management about the SUBJECT PARCEL.

13. On September 6, 2013, the SUBJECT PARCEL was shipped to Willis at 8640 Fawcett Ave, Tacoma, WA 98444. The return address was M.D. at the same Oakland, CA address. The SUBJECT PARCEL weighs approximately 11 ounces, and is 12.5 by 9.5 inches. Both the weight and dimensions of the SUBJECT PARCEL are consistent with a shipment of pills. The labels on the parcel are handwritten, but no signature waiver is included. When I picked up the package, it rattled in a manner consistent with a shipment of pills.

14. On September 9, 2013, I spoke with a mail carrier for Willis's address. The mail carrier told me that Willis frequently waits outside his residence to accept packages. The last time the carrier attempted to deliver a package, Willis was not present to receive the package. However, Willis saw the mail carrier leaving and chased the mail carrier down to accept the package.

15. On September 9, 2013, I placed the SUBJECT PARCEL in a partially closed desk drawer inside an office room at the HIDTA Airport Group building in SeaTac, WA. DEA Task Force Officer Cory Stairs applied his narcotics detection K9 "Caro" to an adjacent room and the hallway before allowing him to sniff the room where the SUBJECT PARCEL was located. Officer Stairs then applied K9 Caro to various

items around the room where the SUBJECT PARCEL was located. As K9 Caro approached the SUBJECT PARCEL, Officer Stairs observed K9 Caro place his nose directly on the SUBJECT PARCEL and sit. When K9 Caro sits, it is an indication that he could smell the odor of narcotics. Further information about the narcotics detection canine's qualifications and this investigation are provided in the attached affidavit of Officer Stairs, incorporated herein by reference.

## CONCLUSION

16. Based on the facts set forth in this Affidavit, as well as the affidavit of Officer Stairs, I believe there is probable cause to conclude that the SUBJECT PARCEL contains controlled substances, currency, documents, or other evidence, more fully identified in Attachment B, that relates to the mailing and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances).

_____
BRYCE K. DAHLIN
Postal Inspector, U.S. Postal Inspection Service


SUBSCRIBED AND SWORN to before me this _10th_ day of September, 2013.

_____
JAMES P. DONOHUE
UNITED STATES MAGISTRATE JUDGE

AFFIDAVIT OF BRYCE K. DAHLIN- 6

# ATTACHMENT A
## Parcel to be searched

One Express Mail parcel addressed to "Saleem Willis, 8640 Fawcett Ave, Tacoma, WA 98444" with a return address of an individual with the initials "M.D." at an address in Oakland, CA, zip code 94619. This parcel is an Express Mail parcel measuring approximately 12.5" x 9.5" with a weight of approximately 11 ounces. This parcel is postmarked September 6, 2013, from zip code 94619, in Oakland, California and carries $19.95 in postage. The delivery confirmation number is EI 991441398 US.

ATTACHMENT A
PARCEL TO BE SEARCHED                    -1-

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B
### Items to be seized

The following items that constitute evidence, instrumentalities, or fruits of violations of Title 21, United States Code, Section(s) 841(a)(1) and 843(b), unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances:

    a.    Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, oxycodone, and Oxycontin;

    b.    Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

    c.    Controlled substance-related paraphernalia;

    d.    Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

    e.    Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

    f.    Fingerprints and/or handwriting, to identify who handled and/or mailed the package.

ATTACHMENT B
ITEMS TO BE SEIZED — -1-

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**DEA HIDTA Task Force Group D-22**
**Valley narcotics Enforcement Team**

**Case No. GFRE-13-9227**

Task Force Officer Cory Stairs
September 9, 2013

---

DETAILS

On September 9, 2013, I was contacted by the US Postal Inspection Service and requested to use my narcotics detection canine to conduct a "Sniff" of a parcel believed to contain narcotics.

This particular "subject" parcel was intended to be delivered to Tacoma, WA and listed a serial number on the envelope of EU991441398.

Inspector Bryce Dahlin placed the "subject" parcel in office room out of view of "Caro". I used "Caro" to conduct a sniff of an adjacent room and then hallway, before allowing my canine to conduct sniff the room where the "subject" parcel was placed with other packaging material and boxes. Caro 'sniffed" the contents of the room and when he came to the "subject" parcel, which was placed in an partially closed desk drawer, I observed Caro place his nose directly on the "subject" parcel and sit. When "Caro" sits, it is an indication to me that he could smell the odor of narcotics.

Caro was rewarded with a ball and concluded the search.

TRAINING/EXPERIENCE

I am a commissioned Police Officer for the Port of Seattle Police Department, and have been employed since October 7, 2000. I am currently assigned as a Task Force Officer of the United States Drug Enforcement Administration (DEA), as an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18. My duties include investigating federal and state narcotics violations within the jurisdiction of the Port of Seattle, the County of King, State of Washington, and the United States.

I am a graduate of the Basic Police Academy provided by Washington State Criminal Justice Training Commission. I have received over 200 hours of classroom training including but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances. I have completed the two week basic narcotics investigations course with the Drug Enforcement Administration and I have received nationally recognized narcotics training provided by the International Narcotics Interdiction Association (INIA) as well as the California Narcotics Officers Association (CNOA).

By virtue of my assignment with the DEA, I am authorized to conduct investigations into violations of the Controlled Substances Act. In doing so, I have conducted a variety of investigations into violations ranging from simple possession of narcotics to complex international conspiracies. Because of this experience and training, I am familiar with common methods of investigating drug trafficking organizations, and have become familiar with the methods of operation of drug traffickers, including, but not limited to, their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs;

their use of cellular telephones, telephone pagers, emails, and other electronic means of communication to further their narcotics trafficking activities; and their use of numerical codes, code words, counter-surveillance, and other methods of avoiding detection by law enforcement. I am also familiar with the various methods of packaging, delivering, transferring, laundering, and expatriating drug proceeds.

I have participated in the execution of numerous narcotics search warrants. Most commonly, these warrants authorize the search of locations ranging from the residences of drug traffickers and their coconspirator/associates, to locations used to manufacture, distribute and hide narcotics and drug proceeds. Materials searched for and often recovered in these locations include packaging materials, manufacturing items, scales, weapons, documents and papers reflecting the distribution of controlled substances and the identity of coconspirator associates, and papers evidencing the receipt, investment, and concealment of proceeds derived from the distribution of controlled substances.

CANINE QUALIFICATIONS

I'm currently assigned to the DEA HIDTA Taskforce and handle a narcotics canine as a collateral duty. In November 2010, I completed the state mandated requirement of 200 hours of canine narcotics specific training and met the canine performance standards set by the Washington Administrative Code (W.A.C.) 139-05-915 for the Narcotic Dog Handler (General Detection). My training consists of over 300 hours of training in the classroom as well as practical applications, which covered all areas specified by W.A.C.

On November 14, 2010 Canine "Caro" and I were certified as a team by the Washington State Police Canine Association. The WSPCA is an organization with voluntary membership to improve training and effectiveness of canine teams statewide. The WSPCA certification is also voluntary with more stringent standards than the state requirement. The substances trained on by the team are cocaine, heroin, methamphetamine and marijuana/hashish.

On May 17, 2013, Canine "Caro" and I were again certified as a team by the Pacific Northwest Police Detection Dog Association. PNPDDA is also an organization with voluntary membership to improve training and effectiveness of canine teams working in the Pacific Northwest. The PNPDDA certification is also voluntary with more stringent standards than the state requirement. The substances trained on by the team are cocaine, heroin, methamphetamine and marijuana.

Caro is a passive alert canine. "Caro" is trained to give a "sit response" after having located the specific location the narcotics odor is emitting from. The handler is trained to recognize the changes of behavior the canine exhibits when it begins to detect the odor of narcotics. The odor can be emitting from the controlled substance itself, or it can be absorbed into items such as currency, clothing, containers, packaging material, etc. Narcotic smelling canines such as "Caro" have an inherently keen sense of smell, and will continue to alert on the container or item depending on the length of exposure to the controlled substance, and the amount of ventilation the item is exposed to.

Caro's reward for finding narcotics / narcotic related items is a rubber ball. Caro and I continue to train on a regular basis to maintain our proficiency as a team.
On-going training includes:
- Training in all areas of interdiction, such as vehicles, boats, truck tractor and trailers, schools, currency, parcels and mail, airports and airplanes, bus and bus depots, storage units, residences, trains and train depots, prisons, motels, apartments, etc.
- Training on various quantities of controlled substances, ranging from grams to ounces, and pounds when available.

- Training on novel odors, such as odors that are distracting, masking, or new.
- Training on controlled negative (blank) testing, in which all objects or locations have no contraband present.
- Training in "Double Blind" scenarios
- Extinction training, which proofs the dog and prevents him from alerting to common items associated with controlled substances, such as plastic bags, etc.

I maintain both training logs and field activity/application reports. Both are available for review upon request. At this time the team has found over 953 narcotics substance training aids and 101 applications in the field resulting in the seizure of narcotics and currency. Canine "Caro" maintains approximately a 92 percent rate of accuracy in field applications.

Canine Caro was trained and certified prior to the effective date of Initiative 502. Canine Caro is trained to detect the presence of marijuana, heroin, methamphetamine, and cocaine. Canine Caro cannot communicate which of these substances he has detected. Canine Caro can detect minuscule amounts of these four substances. Canine Caro cannot communicate whether the detected substance is present as residue or in measurable amounts. Despite these limitations, canine Caro's alert provides probable cause to believe that evidence of a Violation of a Uniform Controlled Substance Act may be found where the canine provides a positive alert for the odor of controlled substances.

I certify or swear under the penalty of perjury the foregoing statement is true and correct.

Detective Cory W. Stairs
DEA Task Force
Badge #10253
September 9, 2013